**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**Charles WORTHINGTON, Appellee.**

Court of Appeals of Kentucky.

March 2, 1962.

J. M. Terry, James F. Wheeler, Louisville, J. C. Baker, Harlan, Glenn W. Denham, Middlesboro, Henry L. Bryant, for appellant.

Carlos B. Pope, Barbourville, for appellee.

MILLIKEN, Judge.

This is an appeal from a judgment of the Harlan Circuit Court, sitting without a jury, awarding to appellee, Charles Worthington, the sum of $4,158.20, with interest from the date of the judgment until paid, and the cost of the action. The action arose out of a collision between a diesel locomotive owned and operated by appellant, the Louisville & Nashville Railroad Company, and a 1958 Fairlane sedan owned and driven by appellee. The main question on appeal is whether the court properly applied the last clear chance doctrine.

The collision occurred at a public crossing in Coxton, Harlan County, Kentucky, about four miles from the City of Harlan, on the afternoon of April 10, 1958, between 4:00 and 6:00 p. m. Plaintiff was driving his automobile in an easterly direction along the road that led from the main highway, across Clear Creek and across the railroad line roughly parallel thereto and into the community of Coxton. There are two parallel railroad tracks at that point, one of which, the westernmost track, is the main

track of the Railroad Company between Evarts and Loyall, Kentucky, and the other, the easternmost track, is a passing track. Thus plaintiff and others traveling in the same direction (toward the east) would cross the main (or westernmost track) first. On the easternmost track there were stored some "gondolas" or "gons", railroad cars of the type used for carrying coal. The main track and passing track curve to a moderate degree, so that if the curve were extended on to form a circle the main track would be on the outside of the circle and the passing track on the inside.

According to plaintiff's testimony, he drove up to the crossing, stopped, and looked up and down the railroad track and at first did not see the train although his view was unobstructed for ten or twelve car lengths. He drove his car up onto the track and "just happened to see the train." He testified that he did not know what attracted his attention to the train after he drove upon the crossing. Plaintiff also testified that he could see up the track ten rails from the crossing, that he first saw the train when his car had gone about two or three feet onto the crossing, and that he stopped and backed his car up a "couple of feet," and then the train hit his car.

The train which hit plaintiff's automobile consisted of a diesel locomotive, running backwards, and a caboose which it was pulling. The engineeer and fireman testified that the whistle was blown properly and the bell was ringing. Plaintiff and some of his witnesses testified that they did not hear the whistle or the bell. The train was moving at an "ordinary speed" of twenty to twenty-five miles per hour, according to the Railroad's witnesses. Plaintiff's witnesses estimated its speed at between forty and fifty miles per hour. The brakeman, who was in the cupola of the caboose on the right-hand side, saw the automobile when the train was four or five car lengths from the crossing. He testified that plaintiff's car did not stop as it approached the crossing, and that he did not think the driver stopped before he got on the crossing. A number of men, some of whom testified for plaintiff at the trial, were standing or sitting on or near the crossing as the train approached, and they knew the train was coming and moved out of the way.

The engineer saw plaintiff's car on the track when the train reached a point six or seven car lengths (300 to 350 feet) from the crossing. He saw the car and noticed that it was jerking back as if it had come to a stop and the driver had shifted into reverse. He then applied the brakes "and started to stop as quick as I could" and, at a distance of about two car lengths (100 feet) of the crossing he applied the emergency brake. The engineer did not apply the brakes in emergency at first because he thought the driver would keep on going forward instead of backing up. When the car stopped and the engineer saw that the driver (plaintiff) intended to back up, he applied the brakes in emergency, but he said it was impossible to stop the train in the distance available at the time he saw the automobile stop. The brakeman testified it would take at least 250 feet to stop the train with the emergency brake, and that it was impossible to stop it in time to avert the accident.

At the conclusion of the evidence for the plaintiff, the Railroad moved to dismiss the complaint on the ground that plaintiff had shown no right to relief. The motion was overruled, the court entered judgment for plaintiff and the Railroad has appealed.

In its opinion and finding of facts, the trial court said:

"The trainmen all testified the whistle was blown. We have an equal number present at the crossing who said no signal was given. The Court feels the evidence preponderates to the effect that no signal was given.

"The Court further feels from the state of these facts that the engineer did not have his engine under proper

control in view of all circumstances surrounding this accident. It was known by the crewmen, and this knowledge is passed on to the defendant, L & N Railroad Company, that this crossing was a place where people sat, loafed and frequented. It seems to the Court that an added duty should be placed on the operator of trains when that circumstance exists.

"The Court gets the impression this was not a private crossing but a public crossing, and therefore, a duty was owed to give a warning to people that used the crossing of approaching trains.

"The Court feels that even though Mr. Worthington (the plaintiff) may have been negligent in the operation of his automobile, the operator of the Railroad engine had the last clear chance to stop the train and to avoid the collision. The engineer stated that he saw the automobile on the crossing when he was some 300 to 350 feet away from it and that he applied his brake.

"According to the testimony of the plaintiff, he acted in emergency when he first discovered the approaching train; therefore, he was not required to use the wisdom and judgment of persons acting in circumstances other than this.

"The Court concludes that the Railroad engine was traveling at a greater speed than 25 miles an hour, because had it not been making greater speed, perhaps the engineer could have stopped the train when he finally put his brake in emergency. The train failed to stop. Had the engineer exercised due diligence, he could have stopped this engine before it struck the automobile, and the Court feels he failed to do this, and that as result of these acts of negligence, the automobile of Mr. Worthington was struck and he received personal injuries."

The Railroad Company insists that the trial court erred in rendering judgment for plaintiff, and further erred in denying its motion to dismiss the complaint because, as a matter of law, on the basis of so much of the evidence as is uncontroverted, plaintiff was guilty of contributory negligence that was a proximate cause of the accident and defendant did not have the last clear chance to avoid the accident.

■ There is sufficient evidence to support the trial court's finding that no bell or whistle was sounded to give warning of the train's approach which should have been done within fifty rods of the crossing. KRS 277.190. The conclusion that the engineer did not apply his emergency brake as promptly as he should is supported by evidence. Furthermore, its finding that the train was traveling faster than twenty-five miles an hour as it approached the crossing has testimony to support it. Whether the court found the plaintiff was contributorily negligent is difficult to assume from the wording of the opinion, for the court concluded "even though Mr. Worthington (the plaintiff) may have been negligent in the operation of his automobile, the operator of the Railroad engine had the last clear chance to avoid collision", which must be considered in context with that part of its opinion which found no signals had been given and, which concludes, "Had the engineer exercised due diligence, he could have stopped this engine before it struck the automobile, * * * and that as a result of these acts of negligence, the automobile was struck * * *."

■ We must consider the fact that the trial court had the opportunity to hear and see the witnesses and had the duty to weigh the evidence: that it found no signal was given by the train, that the train was traveling too fast considering the nature of the crossing and that the engineer could have stopped the train in time had he applied his emergency brake before he did after discovery of the plaintiff's peril. When we review its findings (CR 52.01) we have little reason to declare them so "clearly erroneous" as to justify

a reversal, for there is probative evidence to support each of them. Clay, Ky.Civil Rules, pp. 466, 467 and 468.

The judgment is affirmed.

MONTGOMERY and BIRD, JJ., dissenting.